You will hear argument today in Beaty v. Schriro, Mr. Charlin, or whoever is representing the Petitioner's side. Thank you. You may proceed, Counsel. May it please the Court. My name is Ashley McDonald, and I represent Petitioner Donald Beaty in this matter. With me at counsel table are Dale Bache and John Charlin. Mr. Charlin will be speaking to you on rebuttal, and I would like to reserve time, please. You certainly may. Just watch the clock. Okay. Thank you. This is a case of actual innocence. Angel Bellow was a lead witness at Beaty's trial. What the prosecution knew but did not disclose to Beaty's defense lawyer at the time of trial was that Bellow had a prior conviction for sexual assault and that he was a suspect in the murder of a girl named Tina Reed. The prosecutor withheld both pieces of information from Beaty at trial. Counsel, why isn't the actual innocence claim made at this stage procedurally barred? Are we talking about under the standards of 2244B? Sure. Okay. Mr. Beaty's actual innocence claim meets those standards because it's a new claim based on newly discovered evidence that could not have been found previously by due diligence, and it goes to his actual innocence. In addition, at this point in the proceedings, Beaty needs to make only the requisite prima facie showing to show that he can meet the requirements of 224B3C, and he can make that. The prima facie showing is a lenient standard and requires simply a sufficient showing of possible merit to warrant a fuller exploration by the district court. Even if we take your point that it's not procedurally barred, would you talk about the timing of the discovery in light of the multiple applications and appeals that have already been heard in this case? Certainly. In addition, Mr. Beaty's counsel discovered this information in late 2005, and since then there have been properly filed state PCR petitions pending up until I can find for you the date the last one was dismissed. I can look up that date, but we should not run into a one-year statute of limitations problem if that's what you're concerned about. No. We're concerned about a late, you know, the number of appeals we've had in the case, and of course we need to determine whether it's actually barred, procedurally barred. But when you have late discovered evidence like this, at least in your view that it's late discovered, there needs to be a justification for why it couldn't have been reasonably discovered later and what the circumstances are that would cause us, in effect, to kind of bust open the whole procedural posture of the case and start over on that point. The evidence could not have been discovered previously because the prosecution withheld the evidence. There are multiple pieces of evidence we're discussing. The prosecution withheld two of the pieces of evidence at the time of trial. One was that Bellow, who testified at Beatty's trial, had been convicted of prior sexual assaults, and the other was that he was a suspect in the murder of Tina Reid. Subsequent to that, Beatty's habeas counsel discovered that a pubic hair found in Reid's vagina is a DNA match to Angel Bellow. In addition, Angel Bellow was convicted in 1988 of sexual assault of two women in a string of rapes. And all of these factors taken together shows a pattern of rapes and murders that Reid committed, or that evidence leads to the conclusion that Reid, that Bellow committed. And what about the other serological evidence that's already in the case? Most of that serological evidence refers to a semen stain found on the sheet that was wrapped around the victim, Kristi Fornoff. We don't think that sheet is nearly as probative as the other pieces of evidence that could be tested for DNA. There are vaginal swabs, vaginal smears, and a bathing suit that the victim was wearing at the time of the assault that has visible stains on it. We think testing on those three items would be more probative of who committed this crime than testing on the sheet that was wrapped around her. Now, this murder occurred in what, 1985? 1984, yes. 1984. This testing you're talking about that would implicate Bellow, what does the record  asking to have performed? This is testing that we would like for you to grant us authorization to pursue this claim in the district court as a successor petition and then have the district court manage the evidentiary expansion of the record for these items. Is there any showing that 23 years after the fact that this evidence is even obtainable? The evidence still exists, yes. What I'm suggesting is, is there a viable scientific test that can be performed 23 years after, 24 years after? I don't know that whether anyone has tried to pull DNA off of these three things that we're saying should be tested. We know the three things still exist, and what we would like to do is go back to the district court. There's actually a procedure under state law in Arizona for state post-conviction DNA testing. We would like to use the state court's procedure and have the district court just manage the evidentiary development. The following are the things that we believe link Bellow to the murder of Kristi Fornoff. This goes back to what we were discussing earlier about how many pieces of evidence there are here, and it's the pattern that's compelling. One, Tina Reed was killed in 1980. Bellow was a suspect at the time of Reed's murder. As the state admits, pubic hair found in Ms. Reed's vagina is a match to Bellow's DNA. This evidence was just discovered by Beatty's habeas council, at least in late 2005. Ms. Reed was raped, but there was no sperm present inside her, and she was killed by asphyxiation. Two, Bellow was convicted in 1981 for the rape of another young woman. If Beatty is granted an evidentiary hearing in district court, we believe the evidence will show that Bellow attempted to asphyxiate this young woman as well, but she later regained consciousness. Three, the Fornoff murder occurred in 1984, with characteristics that are strikingly similar to those of the Reed murder, in that the young victim was raped, but a lab report shows no sperm inside her, and she was killed by asphyxiation. In addition, hairs from Bellow's ferret were found on Kristi Fornoff's body. Four, Bellow was convicted in 1988 of raping two more young women in a string of rapes. If Beatty is granted an evidentiary hearing in district court, we believe the evidence will show that Bellow attempted to asphyxiate these young women as well. As this court is aware, at Beatty's trial, the state asserted that the presence of hair from Bellow's ferret on the victim was evidence that the victim had been in Beatty's apartment, because Bellow had previously occupied that apartment with his spirit. If Beatty's defense lawyer had known at the time of trial that Bellow had a prior conviction for sexual assault, and that he was a suspect in the Tina Reed murder, the defense could have investigated Bellow as an alternate suspect, presented the theory that Bellow's ferret hair was on Fornoff because Bellow committed the crimes, and cross-examined Bellow in a remarkably different manner. Beatty has made the requisite prima facie showing that this application meets the requirements of 2244B3C, and this court should therefore authorize Beatty to pursue his actual innocence claim in a successor petition before the district court. I have a question about the Adamson claim, about who was authorized at the trial court to select the death penalty. Can you describe for me a procedural path by which you think we could reach that issue, assuming that we, for the sake of the question, that we don't agree with you about the actual innocence claim? A procedural path? Why isn't it procedurally barred is another way to ask the same question. It's not procedurally barred because no Federal court has addressed Beatty's Adamson's claim, Beatty's Adamson claim on the merits. And because the rule in Adamson applied to all cases still pending on direct review, including Beatty's case. Well, he didn't raise it in his initial appeal, even though he could have. In his direct appeal? I believe that he could have raised it in his direct appeal. He could have. It wasn't an Adamson claim at the time because Adamson hadn't yet been decided, but he did raise the issue in his direct appeal. He, yes, he raised it in his direct appeal in his opening brief. And in his first habeas? Yes. Anything further, counsel? Oh, no, Your Honor. Thank you. Thank you. You have about four and a half minutes reserved for your side. Thank you. We'll hear from the State. Thank you. May it please the Court. I'm John Todd. I represent the Respondents in this matter. Concerning the procedural bar on the Angel Bellow claim, as this Court's well aware, even from your footnote in the 2002 opinion, Bellow, Beatty has claimed that Bellow somehow was the murderer for a number of years. That claim was found procedurally precluded on a number of PCRs. When he raised it in his fifth PCR, the trial court found it non-colorable. The counsel may just ---- Could you just refresh us, since there have been a number of appeals? When you talk about the fifth PCR, what date frame are you talking about? I believe ---- I can tell you in a minute, Your Honor. His notice, his PCR notice, which is the first step, was filed November 05, 2002. November 5 of 2003. So it was after the remand. Just to tie up counsel's point, she claims that the newly discovered evidence didn't come into being until 2005. Would you address that point? Yes. In his 2003 fifth PCR, he submitted the voluminous report on the Tina Reid murder from the Mesa Police Department. After reviewing that report, I thought it would be appropriate to see if Bellow, who subsequently had been convicted of rapes of adults, he was a juvenile in 1980, if his DNA would match the DNA in the Tina Reid case. I request the cold case officer to see if it did match. He did submit it to the Mesa Crime Lab. My understanding is that it was, in fact, a match indicating that Angel Bellow sexually assaulted and murdered Tina Reid in 1980, when they were both at Rhodes Junior High School. Okay. Therefore? Therefore, it's newly discovered evidence. Therefore, that is newly discovered evidence in 1905. We're now in 2000. 2000.  What's the relevance to this case? Your Honor, I don't think there is relevance in that the evidence, all it shows is that Angel Bellow killed, assuming that's correct, Tina Reid. There, it doesn't, there's no evidence that connects Angel Bellow with the murder of Christiane Fornoff in 1984. He had, there's no evidence that shows that he was even at the apartment in 1984. There's no evidence tying him to the crime in 1984. Conversely, there's Except for the ambiguity of the ferret hairs, I suppose certainly they could have been left behind all those years ago, and their theory is, no, that they were brought onto the scene in 1984. Well, as I understand the record, he had kept the ferret, he being Angel Bellow had kept the ferret in a closet in the apartment that Beatty subsequently took possession of. The ferret was released in August of 04, according to, August of 1983, according to the testimony. The ferret, there was an albino ferret. Apparently there were hairs consistent with that on the sheet that had the semen stain. During the fifth PCR, we offered to have the semen stain DNA tested for to see if it's Beatty's, and he objected to that. We have extended that offer to have that semen stain tested whenever they want. But they could do that. Did you offer, did you ever pursue testing that against Bellow during your cold case investigation? That semen stain? No, because Or you said there's three pieces of evidence. I'm not sure what the other three pieces of evidence she's talking about. I have not been informed as to what she's talking about. But the State has a procedure. They don't need the Federal court. They can go in if they have evidence, DNA, evidence that would possibly be, that would be exculpatory as to the crime. They can go into State court and get an order and have that tested. And that has not been done since 2005 when? That has not been done. No. You're saying that now that it has been determined that Bellow was involved with Reed and that there may be some similarities, that that would be sufficient to go in and have the evidence in the Beatty case tested against Bellow? No, not against Bellow, against Beatty. Against Beatty. Right. Because the problem is that there is, as I'm told, is that there's a small amount of the sample left of the semen stain. That would be the most determinative. But if they test it, they'll probably consume it. And so I need to But it could rule out Beatty. It could rule out Beatty. I mean, if you were innocent. It could rule out, rule in, or it could be inconclusive. It could be inconclusive. And that's, I mean, it could very well be inconclusive just because of the lax of time. But the point under 2244B is that he hasn't made a prima facie case. Even if we accept the, that Bellow killed Tina Reed, that looking at the entire evidence, including Beatty's voluntary confession, including all the circumstantial evidence this Court pointed out in its prior opinions, including the evidence that's consistent, consistent with Beatty's blood type and PEMG, I believe it is, PGM, it doesn't meet the prima facie standing under 2244B. I'd like to, if there's, I guess, a couple of corrections. I don't believe there's any, if you look at the record, Bellow was not a lead witness. His sole purpose was to, foundation as to where the Harris came from. There's no evidence in this record, plus the claims have been precluded numerous times, that the prosecution knew anything about Bellow's juvenile record. Or, and I think if you had the police reports, you'd see that he was just one of many suspects in that Tina Reed murder back in 1980, when he was in junior high school. So there's no real tie there. The, just to very briefly mention the mental retardation claim, which I find amazing that they would bring that claim before this Court at this time. First, they obtain a stay in district court, on the remand, to determine whether or not Bellow's juvenile record is valid. And then they go back and have an Atkins examination by Dr. Overbeck of Beatty. They filed their PCR notice, saying they wanted, based on Atkins, they, the state court appointed Overbeck also, as did the district court, to do the examination. He had a contact visit with Beatty, and then they didn't pursue the Atkins claim in state court. So that claim has never been precluded. I mean, excuse me, it's never been presented, fairly presented to the state court. And, of course, we knew nothing about the results of the Atkins claim until the November 04 evidentiary hearing, where Dr. Overbeck taught, testified concerning the voluntariness. And he, in his testimony, he stated that one of his purposes of being retained was to determine whether or not Beatty was mentally retarded. And that testimony is at the supplemental ER at page 21. He testified, their witness testified at S.E.R. 23 that he was not mentally retarded. And at S.E.R. 22, he stated that he had reviewed the school records. So there, this claim was never presented to state court. It was, there's no evidence, in fact, the evidence is contrary to him being, any claim that he's mentally retarded. But what it has gained is this additional delay in the proceedings by raising it. And it's, in our view, totally fervorless. Are there any questions? Yes. Would you discuss the Adamson claim and your view of whether it's procedurally barred? Your Honor, I'm not sure if he raised it in his first habeas petition, but if he did, this Court found that it was procedurally barred. Because the only claim that this Court found, as I recall, was the voluntariness claim and is in your 2002 opinion. But beyond that, and more important, there's no legal authority that says that the  Ninth Circuit is binding law on a state court, that the highest state court and the Ninth Circuit are both under the U.S. Supreme Court, even on constitutional issues. They did cite and then reply a case concerning the Arizona English-speaking amendment. That case had sort of a tortured history. But it ended up in the U.S. Supreme Court. And the site of the U.S. Supreme Court is 520 U.S. 43. I believe it's 1997. This is Indiguez? Yes. Correct. I couldn't pronounce it, Your Honor. Okay. At footnote 11, as I read footnote 11, Justice Ginsburg sort of makes fun of Justice Brinehart's discussion of how the Ninth Circuit law might be binding on a state court determination. But you can read that for yourself and draw your own conclusion. But clearly, there's no authority that I'm aware of that the state court has to follow the Ninth Circuit. And then the Adamson claim was before the Supreme Court. They denied cert. And they decided Walton, which approved at that time the judge finding of aggravating circumstance. Anything further? Pardon? Anything further? Only if the Court wishes anything. Okay. Thank you, counsel. We'll hear from whom? Mr. Charland. Mr. Charland. All right. Thank you. I will quickly address the Bellow issue. As the Court concedes, it is newly discovered evidence because there's DNA testing that was done, and the State should be applauded for it, on Tina Reed. And I don't get the connection with Reed. The connection with Reed, and that is the issue. The issue is, is the evidence relevant enough to show a prima facie case? And the relevance is, the evidence is relevant enough. But connect it up. How does evidence with respect to one murder have anything to do with another? It demonstrates a series of copycat crimes, the first one being Tina Reed, the next one being the 1981 conviction where he broke into someone's house, strangled the gal and did not enter her. Same thing with Tina Reed. And then it all happens with Christy Fornoff in 1984. It happened again in 1986 when he was a real estate rapist. So the Fornoff murder fits into a series of copycat crimes all committed by Bellow where the victims are blonde, the victims are asphyxiated. There is an impotency issue for each of those events. And then there is, as the courts pointed out, the ferret hair. If you were to look at this crime, the Fornoff crime, and say. Can I ask you a question about that? Opposing counsel pointed out that the evidence showed that Bellow had divested himself of the ferret a year before the Fornoff murder. Is that a correct statement of what's in the record? It is a correct statement that he testified that he got rid of the ferret before he left the apartment. They would have cleaned the apartment in that meantime. Is there any contrary evidence other than just pure speculation? Is there any evidence that he possessed, that Bellow possessed the ferret in 1984? There is evidence from which a jury could infer he still had the ferret. When the police went to Bellow and said, do you have any hairs from this ferret, he produced a bean bag that was full of ferret hair. He claimed he kept it in the apartment, but they moved out of the apartment and there was still a ferret hair. He also testified that he had gotten rid of it himself in months before he moved out. The apartment complex would have cleaned the apartment. They would have cleaned it themselves, but the apartment complex would have cleaned the apartment. Somebody else moved into the apartment after Bellow vacated it. The apartment complex would have cleaned the apartment then, and then Mr. Beatty moved in. So it's more tenuous to think that the Bellow ferret hair came from Mr. Beatty as opposed to directly from Mr. Bellow's still keeping the ferret hair. Let me just stop, though. Your colleague said that there's several items of evidence that could now be tested for DNA as against Mr. Bellow, and that, in effect, is what you'd be asking the district court for. Is that correct? That is correct, Your Honor. But is it also true that the State has offered you an opportunity, or offered Mr. Beatty an opportunity, to have that DNA test conducted vis-à-vis Mr. Beatty's DNA? Yes, Your Honor. And if that were done, then it could potentially rule him in, out, or inconclusive. Is that correct? That is correct, Your Honor. But instead of that, you're asking this Court to open a whole new proceeding as to a second individual rather than taking this opportunity for Mr. Beatty to seek his redemption. There's a State procedure, and we have been in touch with Mr. Todd about pursuing that State procedure. But on the present case, the issue is remanding it to the district court on the issue or allowing the successful petition on the issue of actual innocence. And I'm sure that will take into account the DNA testing procedure that we are debating with Mr. Todd through the State court. Let me ask you a question about that. Mr. Todd's assertion is that a State procedure could have been launched with or without the Federal court's involvement to require additional DNA testing. And if that's the case, what have you or other counsel on Mr. Beatty's behalf done in State court to pursue that since 2005? What we have done is there was a motion for DNA testing. We said the issue is not ripe, but we need an expert. And we also want to do the DNA testing on Mr. Bellow. And we have some other things other than what the State does. This is in State court. Yes. And we have some other items such as the vaginal swabs. And when was that procedure started? I think that was 2004, 2005. And that is the issue. And those, that was being debated on the issues that are now before the court. Why hasn't the State court resolved that some five years later or four years later? The court simply denied the petition and the DNA testing. But the DNA testing was as to Mr. Bellow, correct? I'm sorry. The DNA testing would have been Bellow's DNA against these items as opposed to Beatty. It was actually a motion by the State for Mr. Beatty's testing of the DNA on one item. And we wanted several more items. But we also said let's do Bellow as well on the Fornoff murder. Okay. So let's separate the two just to make sure we understand. Yes. What was the result on, it was the State request for Mr. Beatty, correct? Yes. It was the State request. And he declined. He didn't want to do that. Well, we. Tell me. Yes. Not correct. What we said was that is something we should address. But there are some other issues we're addressing right now. Remember, that's a no. No. Well, it was. No, we don't want to do it unless you will also link in Mr. Bellow. Is that? That's not correct, Your Honor. Okay. So what's the answer? The answer was. Did Mr. Beatty agree to have his DNA tested in response to the State's request? He didn't agree or disagree. He said it's premature. But, yes, DNA testing makes sense. But let's test other items and let's test Mr. Bellow. And please appoint us a court expert on the issue. And rather than ruling at all, the court denied the motion. Well, it sounds like it was a no unless you meet further conditions. It was a hold it in abeyance because there are some other issues being addressed. In other words, he didn't agree to it. Yes. We weren't saying now is the time to do it.  And we think more things should be tested. The State has indicated, at least as I heard it, that that option is still open to Mr. Beatty for his testing. Is that your understanding? Yes, Your Honor. And we are talking to the State on that issue through a State court procedure. Okay. Thank you, counsel. Your time has expired. Okay. The case just argued will be submitted for decision, and the Court will adjourn.
judges: O'scannlain, Graber, McKeown